**DLA PIPER LLP (US)**
MARY DOLLARHIDE (Bar No. 138441)
*mary.dollarhide@us.dlapiper.com*
TAYLOR WEMMER (Bar No. 292539)
*taylor.wemmer@us.dlapiper.com*
JOSEPH J. KIM (Bar No. 351049)
*joseph.kim@us.dlapiper.com*
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
T (858) 677-1400) | F (858) 677-1401

Attorneys for Defendants
BAE SYSTEMS MARITIME SOLUTIONS SAN DIEGO INC., erroneously sued as BAE SYSTEMS, INC., and TRADE TEAM USA, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUIS QUIRINO ROCHA, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAE SYSTEMS, INC., a Delaware corporation; TRADE TEAM USA, LLC, a Virginia limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. **'25CV3774 BTM VET**<br><br>**JOINT NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANTS BAE SYSTEMS MARITIME SOLUTIONS SAN DIEGO INC., ERRONEOUSLY SUED AS BAE SYSTEMS, INC., AND TRADE TEAM USA, LLC**<br><br>[*Removed from San Diego County Superior Court, Case No. 25CU062206C*]<br><br>Complaint filed: November 19, 2025 |

1627062699

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

I. SUMMARY OF ALLEGATIONS AND COMPLIANCE WITH STATUTORY REQUIREMENTS FOR REMOVAL .......... 1

II. BASIS FOR JURISDICTION .......... 3

III. FEDERAL OFFICER REMOVAL UNDER 28 US.C. § 1442(A) .......... 3

IV. FEDERAL ENCLAVE JURISDICTION UNDER 28 U.S.C. §§ 1331, 1441(A) .......... 6

V. ORIGINAL JURISDICTION – THE CLASS ACTION FAIRNESS ACT .......... 9

- A. Class Size. .......... 9
- B. Citizenship of the Parties. .......... 10
- C. The Classwide Amount in Controversy Exceeds $5 Million. .......... 11
  - i. Damages or restitution for allegedly unpaid wages .......... 15
  - ii. Penalties for alleged meal and rest break violations .......... 16
  - iii. Alleged waiting time penalties .......... 18
  - iv. Penalties for alleged wage statement violations .......... 19
  - v. Penalties for alleged failure to pay timely wages during employment .......... 20
  - vi. Attorneys' fees .......... 21
  - vii. Summary of CAFA amount in controversy .......... 22

VI. CONCLUSION .......... 23

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Anderson v. Watts*,
138 U.S. 694 (1891) .......... 10

*Arias v. Residence Inn by Marriott*,
936 F.3d 920 (9th Cir. 2019) .......... 12, 13, 14

*Carvajal v. Pride Indus., Inc.*,
No. 10CV2319-GPC(MDD), 2013 WL 1728273 (S.D. Cal. Apr. 22, 2013) .......... 8

*Compton v. Oasis Sys., LLC*,
549 F. Supp. 3d 1173 (S.D. Cal. 2021) .......... 7

*Corley v. Long-Lewis, Inc.*,
688 F. Supp. 2d 1315 (N.D. Ala. 2010) .......... 8

*Cty. of San Mateo v. Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022) .......... 4

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) .......... 11, 12

*DeFiore v. SOC LLC*,
85 F.4th 546 (9th Cir. 2023) .......... 5

*Ferrell v. Express Check Advance of SC LLC*,
591 F.3d 698 (4th Cir. 2010) .......... 11

*Fletcher v. Toro Co.*,
No. 08-cv-2275 DMS, 2009 WL 8405058 (S.D. Cal. Feb. 3, 2009) .......... 21

*Fung v. Abex Corp.*,
816 F. Supp. 569 (N.D. Cal. 1992) .......... 4, 6, 8

*Goncalves v. Rady Children's Hosp. San Diego*,
865 F.3d 1237 (9th Cir. 2017) .......... 4

*Hollinger v. Home State Mut. Ins. Co.*,
654 F.3d 564 (5th Cir. 2011) .......... 10

*Hunt v. Washington State Apple Adver. Comm'n*,
432 U.S. 333 (1977) .......... 13

*Ibarra v. Manheim Investments, Inc.*,
775 F.3d 1193 (9th Cir. 2015) .......... 12

*Jimenez v. Haxton Masonry, Inc.*,
No. 18-cv-07109-SVK, 2020 WL 3035797 (N.D. Cal. June 5, 2020) .......... 7

*Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*,
199 F. Supp. 2d 993 (C.D. Cal. 2002) .......... 13

*Korn v. Polo Ralph Lauren Corp.*,
536 F. Supp. 2d 1199 (E.D. Cal. 2008) .......... 12, 13

*Kroske v. U.S. Bank Corp.*,
432 F.3d 976 (9th Cir. 2005) .......... 21

*Lake v. Ohana Military Cmtys., LLC*,
14 F.4th 993 (9th Cir. 2021) .......... 5

*Latiolais v. Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) .......... 5

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......... 4, 5

*Martinez v. Cencora, Inc.*,
No. 5:24-cv-02663-MRA-SHK, 2025 WL 1443021 (C.D. Cal. May 20, 2025) .......... 21

*Mayo v. United States*,
319 U.S. 441 (1943) .......... 7

*McGee v. Arkel Int'l, LLC*,
716 F. Supp. 2d 572 (S.D. Tex. 2009) .......... 6

*Mersnick v. USProtect Corp.*,
No. C-06-03993 RMW, 2006 WL 3734396 (N.D. Cal. Dec. 18, 2006) .......... 9

*Mitchell v. Bank of Am. Corp.*,
No. CV 17-6288 FMO, 2017 WL 4216562 (C.D. Cal. Sept. 21, 2017) .......... 16

*Murphy Bros. v. Michetti Pipe Stringing. Inc.*, 526 U.S. 344 (1999) .......... 2

*NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606 (9th Cir. 2016) .......... 10

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. ED CV 19-0839-DOC, 2019 WL 7987117 (C.D. Cal. June 21, 2019) .......... 18, 20

*Paul v. United States*, 371 U.S. 245 (1963) .......... 6

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) .......... 21

*PRIDE Indus. v. VersAbility Res., Inc.*, 670 F. Supp. 3d 323 (E.D. Va. 2023) .......... 8

*Ramirez v. Carefusion Res. LLC*, No. 18-cv-2852-BEN-MSB, 2019 WL 2897902 (S.D. Cal. July 5, 2019) .......... 10

*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996) .......... 12

*Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029 (N.D. Cal. 2002) .......... 13

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .......... 21

*Surplus Trading Co. v. Cook*, 281 U.S. 647 (1930) .......... 6

*United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087 (9th Cir. 2010) .......... 10

*Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004) .......... 12

**California Cases**

*Jimenez v. CRC Prop. Mgmt. W. Inc.*,
No. 3:19-CV-01547- JAH-MSB, 2021 WL 4312622 (S.D. Cal. Sept. 21, 2021) ........ 8

*Lockhart v. MVM, Inc.*,
175 Cal. App. 4th 1452 (2009) ........ 7

*Murphy v. Kenneth Cole Prods., Inc.*,
40 Cal. 4th 1094 (2007) ........ 17

*Taylor v. Lockheed Martin Corp.*,
78 Cal. App. 4th 472 (2000) ........ 6, 7

**Federal Statutes**

28 U.S.C.
§ 84(d) ........ 3
§ 1331 ........ 1, 3, 6
§ 1332 ........ 1
§ 1332(c)(1) ........ 11
§ 1332(d) ........ 13
§ 1332(d)(2) ........ *passim*
§ 1332(d)(2)(a) ........ 10
§ 1332(d)(6) ........ 3, 9
§ 1332(d)(10) ........ 10, 11
§ 1332(d)(11)(B)(i) ........ 3, 9
§ 1441(a) ........ 1, 3, 6, 23
§ 1441(b)(1) ........ 11
§ 1442(a) ........ 3, 23
§ 1442(a)(1) ........ 1, 3, 4, 6
§ 1446 ........ 14
§ 1446(b)(1) ........ 2
§ 1446(c)(2) ........ 14
§ 1446(c)(2)(A) ........ 11
§ 1446(c)(2)(B) ........ 12
§ 1446(d) ........ 3
§ 1453 ........ 3, 14
§§ 1711-1715 ........ 3

**California Statutes**

Cal. Civ. Proc. Code § 340 .................................................................. 19, 20

Cal. Lab. Code
§ 203(a) ....................................................................................... 18
§ 203(b) ....................................................................................... 18
§ 204 ........................................................................................ 20, 22
§ 204(a) ....................................................................................... 20
§ 210 .......................................................................................... 20
§ 210(a) ....................................................................................... 20
§ 226 .......................................................................................... 19
§ 226(a) ....................................................................................... 19
§ 226(e) ....................................................................................... 19
§ 226.7(c) ..................................................................................... 17

**Other Authorities**

3 Newberg on Class Actions, § 14.03 ................................................. 21

Comm. on the Judiciary, S. Rep. No. 109-14, at 42 (2005) ............................ 13

Roger W. Haines, Jr., Federal Enclave Law, 241 (Atlas Books, 1st ed. 2011) ............................................................................................ 8

United States Constitution Article 1, § 8, cl. 17 ............................................. 6

**TO THE CLERK OF THE COURT, PLAINTIFF LUIS QUIRINO ROCHA, AND PLAINTIFF'S ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants BAE SYSTEMS MARITIME SOLUTIONS SAN DIEGO INC. ("BAE SDMS"), erroneously sued as BAE SYSTEMS, INC., and TRADE TEAM USA, LLC ("Trade Team") (together with BAE SDMS, "Defendants") hereby remove this action from the Superior Court of California in and for the County of San Diego (the "Superior Court") to the United States District Court for the Southern District of California. This removal is pursuant to 28 U.S.C. §§ 1331, 1332, 1441(a) and 1442(a)(1), for the reasons stated below:

**I.**

**<u>SUMMARY OF ALLEGATIONS AND COMPLIANCE WITH STATUTORY REQUIREMENTS FOR REMOVAL</u>**

1. On or about November 19, 2025, Luis Quirino Rocha ("Plaintiff") commenced this action entitled "*LUIS QUIRINO ROCHA, an individual and on behalf of all others similarly situated, Plaintiff, v. BAE SYSTEMS, INC., a Delaware corporation; TRADE TEAM USA, LLC, a Virginia limited liability company; and DOES 1 through 100, inclusive, Defendants.*" in the Superior Court for the County of San Diego, Case No. 25CU062206C (the "Action"). A true and correct copy of the original Complaint filed in the Action is attached hereto as **<u>Exhibit A</u>**. Declaration of Taylor Wemmer ("Wemmer Decl."), ¶ 2.

2. In the Complaint, Plaintiff alleges nine causes of action: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties; (6) wage statement violations; (7) failure to timely pay wages; and (8) failure to indemnify; and (9) unfair competition. *See generally* Compl.

3. On November 24, 2025, Plaintiff served Trade Team with the Summons; a copy of the Complaint; the filed Civil Case Cover Sheet; the Notice of

Case Assignment and Case Management Conference; the Superior Court of California, County of San Diego Alternative Dispute Resolution (ADR) Information sheet; and a blank Stipulation to Use Alternative Dispute Resolution (ADR). Wemmer Decl., ¶ 3. On November 25, 2025, Plaintiff served BAE SDMS with copies of the same documents. *Id.* True and correct copies of the Summons; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference; the Superior Court of California, County of San Diego Alternative Dispute Resolution (ADR) Information sheet; and the blank Stipulation to Use Alternative Dispute Resolution (ADR) are attached hereto as **Exhibit B**. *Id.*

4. On November 24, 2025, Plaintiff filed a proof of service of summons on Trade Team. Attached as **Exhibit C** is a true and correct copy of the proof of service of summons. *Id.* at 4.

5. On November 26, 2025, Plaintiff filed a proof of service of summons on BAE SDMS. Attached as **Exhibit D** is a true and correct copy of the proof of service of summons. *Id.* at 5.

6. On December 22, 2025, Defendants each filed an Answer to the Complaint in the Superior Court. *Id.* at 6. Attached as **Exhibits E** and **F** are true and correct copies of BAE SDMS' and Trade Team's Answers to the Complaint.

7. Exhibits A-F constitute all papers of which Defendants are aware that have been filed with the Superior Court in this Action. *Id.* at ¶ 7.

8. This Notice of Removal is filed within thirty (30) days after Defendants were first served with papers in this Action, which consisted of the above-listed documents. The date on which the first-served defendant Trade Team was served with the summons and a copy of the operative pleading in this Action was November 24, 2025, and this Notice of Removal is being filed on December 24, 2025. *Id.* at ¶ 4. This Notice of Removal is therefore timely pursuant to 28 U.S.C. § 1446(b)(1). *See Murphy Bros. v. Michetti Pipe Stringing. Inc.*, 526 U.S. 344, 347-48 (1999) ("[a] named defendant's time to remove is triggered by simultaneous

service of the summons and complaint . . . but not by mere receipt of the complaint unattended by any formal service”).

9. Other than Defendants, no other defendants are named in the Complaint, and Defendants believe that no other defendant has been served with process in this Action. Wemmer Decl., ¶ 8.

10. Notice of this removal will be given promptly to Plaintiff and the Superior Court pursuant to 28 U.S.C. § 1446(d).

11. Venue of this Action is properly laid in this District because the Superior Court is located within this District. *See* 28 U.S.C. §§ 84(d), 1441(a).

## II.

## BASIS FOR JURISDICTION

12. This Court has original jurisdiction over this Action pursuant to the provisions of 28 U.S.C. § 1331, and may be removed to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1442(a) on the following grounds: (1) under the Federal Officer Removal statute and (2) on the basis that Plaintiff’s claims, at least in part arose on a federal enclave over which the federal government has exclusive jurisdiction.

13. The Court also has original jurisdiction over this civil action pursuant to the Class Action Fairness Act (“CAFA”), Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified at 28 U.S.C. §§ 1332(d)(2), 1453, and 1711-1715), because: (1) the matter involves 100 or more potential class members; (2) the named class representative is a citizen of a state different from one of the Defendants; and (3) the aggregate amount-in-controversy exceeds $5,000,000.00, exclusive of costs and interest. 28 U.S.C. §§ 1332(d)(2), (d)(6), and (d)(11)(B)(i).

## III.

## FEDERAL OFFICER REMOVAL UNDER 28 US.C. § 1442(A)

14. Under 28 U.S.C. § 1442(a)(1), a civil action commenced in state court that is against “[t]he United States or any agency thereof or any officer (or any

person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office" is removable. A case may be removed to federal court under this statute, which is known as the Federal Officer Removal statute, when "(1) [the defendant] is a 'person' within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the action [the defendant] took pursuant to a federal officer's direction, and (3) [the defendant] has a 'colorable' federal defense to plaintiff's claims." *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014).

15. Here, under the first prong, BAE SDMS is a "person" within the meaning of 28 U.S.C. § 1442(a)(1) as this term includes corporations. *See Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992) (holding that defendant General Dynamics "as a builder of submarines under the supervision of the Secretary of Navy or his delegees" was a "person" under 28 U.S.C. § 1442(a)(1)). At all times mentioned in the Complaint, BAE SDMS was a person acting under the direction of the United States Navy, as well as such officers, designees and agents. *See* Declaration of Christy Robinson in Support of Defendants' Joint Notice of Removal ("Robinson Decl."), ¶ 3.

16. With regard to the second prong, a causal nexus exists if the defendant demonstrates that (1) it was "'acting under' a federal officer in performing some 'act under color of federal office', and (2) that such action is causally connected with the plaintiff's claims against it." *Cty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022) (internal citation omitted). This standard is not stringent and should not be applied narrowly. *See Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244, 1250 (9th Cir. 2017) (noting that the 2011 Removal Clarification Act amended § 1442 because courts were construing the statute too narrowly and that the "hurdle erected by [the causal-connection] requirement is quite low") (internal citation omitted); *see also Leite*, 749 F.3d at 1122 (9th Cir. 2014) ("[D]efendants enjoy much broader removal rights under the federal officer removal statute[.]"). The

causal nexus analysis "focuses on whether the defendant was involved in an effort to assist, or to help carry out, the duties or tasks of a federal superior." *Lake v. Ohana Military Cmtys., LLC*, 14 F.4th 993, 1004 (9th Cir. 2021) (internal citation omitted). The causal nexus is therefore established when "the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020). Additionally, this prong is met when plaintiff's claims arise from the defendant's performance of its duties as an agent under an applicable contract with the federal government. *See DeFiore v. SOC LLC*, 85 F.4th 546, 554-57 (9th Cir. 2023) (causal nexus established for contractors performing duties under a contract with the Department of Defense). "In assessing whether a causal nexus exists, [courts] credit the defendant's theory of the case." *Leite*, 749 F.3d at 1124.

17. Here, BAE SDMS primarily performs work on U.S. Naval ships under contracts with the United States Navy. Robinson Decl., ¶ 3. Under these contracts, the U.S. Navy maintains complete control over access to its ships, specifically details what labor needs to be performed on its ships, and ultimately approves all work performed by BAE SDMS and those working for BAE SDMS on U.S. Navy vessels. *Id.* The commanding officer of each ship is in charge of the security protocols for his/her vessel and, therefore, the security protocols vary from ship to ship. *Id.* at ¶ 5. At the Naval Base San Diego, all individuals entering or exiting a pier must pass through a guarded gate monitored by the United States Navy and its personnel. *Id.* Further, all repair and modernization work performed by BAE SDMS must comply with the specifications and rules approved and imposed by the United States Navy and the U.S. Government. *Id.* at ¶ 3. Plaintiff here claims he and/or putative class members have suffered injury due to work performed for BAE SDMS while working on U.S. Naval ships. Therefore, the second prong is met.

18. Under the third and last prong, BAE SDMS has a colorable defense under federal law. The defendant does not need to affirmatively prove the asserted

defense; the defense only needs to be plausible. *See McGee v. Arkel Int'l, LLC*, 716 F. Supp. 2d 572, 578 (S.D. Tex. 2009) ("They need not prove the asserted defense, but need only articulate its 'colorable' applicability to the plaintiff's claims.") (citation omitted). In this case, BAE SDMS and, by extension, Trade Team, have a colorable defense to some, if not all, of Plaintiff's and the putative class members' claims under the Federal Enclave Doctrine, as described in Section IV below.

19. Because all aspects of 28 U.S.C. § 1442(a)(1) are satisfied, removal is therefore proper. *Fung*, 816 F. Supp. at 573.

## IV.

## FEDERAL ENCLAVE JURISDICTION UNDER 28 U.S.C. §§ 1331, 1441(A)

20. This Court has "original jurisdiction of all civil actions arising under the . . . laws. . . of the United States." 28 U.S.C. § 1331. A defendant may remove any civil action brought in state court over which the district courts have original jurisdiction. 28 U.S.C. § 1441(a).

21. The Federal Enclave Doctrine arises under Article 1, § 8, cl. 17 of the United States Constitution, which grants Congress the power to "exercise exclusive Legislation in all Cases whatsoever" over all places purchased with consent of a state "for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings."[1] An area becomes a federal enclave when the United States has acquired the land with the consent of the state. *Paul v. United States*, 371 U.S. 245, 264 (1963); *see also Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 478 (2000) ("An enclave is created when the federal government purchases land within a state with the state's consent . . . ."). Once an area is established as a federal enclave, '"Congress assumes the power of legislation over that area. Federal law

[1] The power to exercise '"exclusive legislation"' holds the same meaning as "exclusive jurisdiction." *See Surplus Trading Co. v. Cook*, 281 U.S. 647, 650, 652 (1930) ("'Exclusive legislation' is consistent only with exclusive jurisdiction.") (citation omitted).

thus applies[.]"' *Lockhart v. MVM, Inc.*, 175 Cal. App. 4th 1452, 1457-58 (2009) (quoting *Taylor*, 78 Cal. App. 4th at 475). Federal law not only applies on an enclave, but preempts all state labor. *Mayo v. United States*, 319 U.S. 441, 445 (1943) ("[T]he activities of the Federal Government are free from regulation by any state."); *Compton v. Oasis Sys., LLC*, 549 F. Supp. 3d 1173, 1182 (S.D. Cal. 2021) (holding that a contractor's employee who worked on a federal vessel was governed by the federal enclave doctrine such that claims under California law were barred).

22. BAE SDMS' ship yard is located adjacent to the U.S. Naval Station in San Diego and BAE SDMS performs all levels of repair and modernization on different types of government vessels, including the U.S. Navy fleet. *See* Robinson Decl. ¶¶ 2-4. The U.S. Navy Fleet includes naval ships of various sizes, including aircraft carriers that can only be worked on at North Island Naval Air Station. *Id.* at ¶ 4. For the past four years, BAE SDMS has primarily worked on U.S. Naval ships. *Id.* at ¶ 2. Putative class members have been assigned to work on several different U.S. Naval ships over the past four years. *Id.* at ¶ 7.

23. The U.S. Naval ships to which putative class members have been and are assigned can be located at one of four different locations. *Id.* at ¶ 4. Putative class members are sometimes moved to different locations depending on the day or even in the middle of a shift depending on the work that needs to be performed. *Id.* at ¶ 7. Two of the locations at which putative class members regularly perform work are the Naval Base San Diego, also known as the 32nd Street Naval Station, and North Island Naval Air Station. *Id.* at ¶ 4. Putative class members are commonly assigned to work at Naval Base San Diego or North Island Naval Air Station for varying lengths of time, from just a few hours on any given day to several days in a row or more. *Id.* at ¶ 6.

24. North Island Naval Air Station has been a federal enclave since 1921. *See Jimenez v. Haxton Masonry, Inc.*, No. 18-cv-07109-SVK, 2020 WL 3035797, at *4 (N.D. Cal. June 5, 2020) (finding North Island Naval Air Station to be

"established as a federal enclave in 1921"); *Carvajal v. Pride Indus., Inc.*, No. 10CV2319-GPC(MDD), 2013 WL 1728273, at *5 n.1 (S.D. Cal. Apr. 22, 2013) ("North Island, where the alleged incident leading [t]o his termination is a federal enclave."); Roger W. Haines, Jr., Federal Enclave Law, 241 (Atlas Books, 1st ed. 2011) (identifying North Island as a federal enclave) (attached as Exhibit C to Defendant's Request for Judicial Notice in Support of Notice of Removal ("RJN")).

25. Additionally, the Naval Base San Diego (formerly known as The Destroyer Base) became a federal enclave on February 23, 1922, pursuant to General Order No. 78 establishing the facility as the U.S. Destroyer Base. *See RJN*, Ex. D (General Order 78); *see also Carvajal*, 2013 WL 1728273, at *5 ("The Naval Base San Diego, formerly known as The Destroyer Base, became a federal enclave on February 23, 1922 pursuant to General Order No. 78 of the Navy Department and the State of California authorized the transfer of land."); *PRIDE Indus. v. VersAbility Res., Inc.*, 670 F. Supp. 3d 323, 333 (E.D. Va. 2023) ("Naval Base San Diego became a federal enclave on February 23, 1922"); *Jimenez v. CRC Prop. Mgmt. W. Inc.*, No. 3:19-CV-01547- JAH-MSB, 2021 WL 4312622, at *4 (S.D. Cal. Sept. 21, 2021) ("Naval Base San Diego . . . was founded on February 23, 1922. . . . Thus, the Court considers February 23, 1922 as the date of acquisition in its discussion of federal enclave jurisdiction.").

26. Plaintiff alleges that he, and members of the putative class (the existence of which BAE SDMS and Trade Team expressly deny) were denied payment for all time worked and denied meal and rest breaks as required under California law. *See* Compl., ¶¶ 16-19, 49-64. As some of the Complaint's alleged injuries inevitably occurred on a federal enclave, federal law necessarily applies and removal is proper. *See Fung*, 816 F. Supp. at 571 (denying plaintiff's motion to remand in part because plaintiff was exposed to asbestos in Navy-owned submarines docked at a federal enclave); *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1324, 1336 (N.D. Ala. 2010) (holding that removal under federal enclave basis was

proper where employee was a repair worker exposed to asbestos aboard Navy-owned vessels docked at federal enclaves); *cf. Mersnick v. USProtect Corp.*, No. C-06-03993 RMW, 2006 WL 3734396, at *7-8 (N.D. Cal. Dec. 18, 2006) (holding that plaintiff's claims for certain California Labor Code violations, including alleged meal and rest break violations and "off the clock" work without pay, were barred under the Federal Enclave Doctrine).

## V.

## <u>ORIGINAL JURISDICTION – THE CLASS ACTION FAIRNESS ACT</u>

27. This lawsuit is a civil action over which this Court also has original jurisdiction pursuant to the CAFA. Accordingly, this Action may also be removed pursuant to 28 U.S.C. § 1332(d)(2).

28. Pursuant to CAFA, federal district courts have original jurisdiction over a class action if: (1) it involves 100 or more potential class members; (2) any class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of costs and interest. *See* 28 U.S.C. §§ 1332(d)(2), (d)(6), and (d)(11)(B)(i).

### A. Class Size.

29. Plaintiff proposes one putative class: "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class . . . ." Compl., ¶ 26.

30. The Complaint does not allege any specific number of members in any of the proposed classes.

31. BAE SDMS employed approximately 1852 non-exempt employees between November 19, 2021, and December 11, 2025. *See* Robinson Decl. ¶ 8.

32. Trade Team employed approximately 228 non-exempt employees who were assigned to BAE SDMS at some point between November 19, 2021, and December 14, 2025. *See* Declaration of Rachel Sherrick in Support of Defendants'

Joint Notice of Removal ("Sherrick Decl.") ¶ 5.

33. Therefore, for purposes of removal pursuant to CAFA, there are well beyond the required 100 members in the proposed class which consists of both BAE SDMS' and Trade Team's non-exempt employees.

**B. Citizenship of the Parties.**

34. CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2)(a); *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that "[t]o achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the . . . minimal diversity [requirement]" in 28 U.S.C. § 1332(d)(2)). Here, such minimal diversity exists among the parties.

35. The Complaint alleges that Plaintiff Luis Quirino Rocha is a "resident of the State of California." Compl., ¶ 2. According to the Ninth Circuit Court of Appeals, "[i]t is a longstanding principle that 'the place where a person lives is taken to be his domicile until facts adduced establish the contrary.'" *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (citing *Anderson v. Watts*, 138 U.S. 694, 706 (1891) and *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011)) (internal quotation marks omitted). Therefore, for purposes of establishing diversity jurisdiction, Luis Quirino Rocha, the only plaintiff identified by name in the Complaint, is a citizen of California.

36. For the purposes of determining the citizenship of a limited liability company ("LLC") under CAFA, federal courts have found that an LLC, such as Trade Team, qualifies as "an unincorporated association" under § 1332(d)(10). *See Ramirez v. Carefusion Res. LLC*, No. 18-cv-2852-BEN-MSB, 2019 WL 2897902, at *2 (S.D. Cal. July 5, 2019) (holding that LLCs are to be treated as unincorporated

associations for the purposes of CAFA); *see also Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 699-700 (4th Cir. 2010) ("for purposes of determining subject matter jurisdiction under the Class Action Fairness Act of 2005 . . . a limited liability company is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10)"). Therefore, an LLC is a citizen of the State under whose laws it is organized and the State where it has its principal place of business. *See id.* Defendant Trade Team is a limited liability company organized under the laws of Virginia and has a principal place of business in Chesapeake, Virginia. Therefore, Trade Team is a citizen of Virginia but not of California. *See* Sherrick Decl. ¶ 2.

37. For purposes of determining the citizenship of a corporation under CAFA, courts look to the state of incorporation and the state where the entity has its principal place of business. 28 U.S.C. § 1332(c)(1). BAE SDMS is a California corporation with a principal place of business in California. Therefore, BAE SDMS is a citizen of California.

38. All potential "Doe" defendants shall be disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1).

39. Because Plaintiff is a citizen of California and at least one Defendant (here, Trade Team) is a citizen of a different state (in this case, Virginia) the citizenship requirements for CAFA purposes have been met.

**C. The Classwide Amount in Controversy Exceeds $5 Million.**

40. "The notice of removal may assert the amount in controversy if the initial pleading seeks: (i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." 28 U.S.C. § 1446(c)(2)(A). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). "[A] removing defendant's notice of removal 'need

not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *see also Dart*, 574 U.S. at 89 (a defendant seeking to remove a case under CAFA need only include in the notice of removal a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold").

41. If the plaintiff or the court questions a defendant's amount in controversy allegation, removal is proper where the "district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. 28 U.S.C. § 1446(c)(2)(B). Defendant's showing on the amount in controversy may rely on "reasonable assumptions" to show that the amount at issue clears the $5 million threshold to confer federal jurisdiction. *See Arias*, 936 F.3d at 922.

42. "Under [the preponderance of the evidence] burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). This "burden is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiffs' claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted) (emphasis in original); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("[T]he parties need not predict the trier of fact's eventual award with one hundred percent accuracy."). "[A]ssumptions made [as] part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Arias*, 936 F.3d at 927 (finding that the district court erred in imposing "a requirement that [the employer] prove it actually violated the law at the assumed rate") (citing *Ibarra*, 775 F.3d at 1199).

43. Congress intended federal jurisdiction to be appropriate under CAFA

"if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Comm. on the Judiciary, S. Rep. No. 109-14, at 42 (2005).

44. Any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case.… Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

45. In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is, therefore, what amount is "put in controversy" by the plaintiff's complaint or other papers, not what the defendant will actually owe for the number of violations that occurred, if any. *Korn*, 536 F. Supp. 2d at 1205.

46. The jurisdictional minimum may be satisfied by claims for special and general damages, attorneys' fees and punitive damages. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002). Also, in actions for declaratory or injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Finally, the Ninth Circuit has held that when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.

*Arias*, 936 F.3d at 922.

47. Thus, Defendant's amount in controversy allegations should be accepted here unless challenged by the Court or Plaintiff. Further, even if challenged, because the Complaint in this action fails to plead a specific amount of damages and the amount of damages is vague and ambiguous, Defendants need only show that the amount-in-controversy requirement has been met for subject matter jurisdiction (CAFA) by a preponderance of the evidence. 28 U.S.C. §§ 1446(c)(2) and 1453 (applying section 1446 to CAFA). The calculations for the amount-in-controversy required for removal under CAFA jurisdiction are detailed below.

48. In the Complaint, Plaintiff pursues nine putative class claims under various provisions of California's Labor Code and Unfair Competition Law. He seeks to recover compensatory damages/restitution, meal and rest period compensation, penalties, injunctive relief, and attorneys' fees and costs on behalf of himself and the putative class.

49. Based on a review of BAE SDMS' employment records, BAE SDMS employed approximately 1852 non-exempt employees at some point between November 19, 2021, and December 11, 2025 ("BAE SDMS' putative class members"). *See* Robinson Decl., ¶ 8. Additionally:

- BAE SDMS' putative class members worked approximately 131,505 workweeks between November 19, 2021, and December 11, 2025, and, on average, earned approximately $32.99 per hour. *Id.*
- Approximately 601 BAE SDMS' putative class members worked a total of 28,955 pay periods between November 19, 2024, and December 11, 2025. *Id.*
- Approximately 214 of the BAE SDMS' putative class members ended their employment with BAE SDMS between November 19, 2022, and November 24, 2025. *Id.*
- All BAE SDMS putative class members worked an average of 8-hour

days. *Id.*

50. Based on a review of Trade Team's employment records, Trade Team, employed approximately 228 non-exempt employees at some point between November 19, 2021, and December 14, 2025 ("Trade Team's putative class members"). *See* Sherrick Decl. ¶ 5. Additionally:

- Trade Team putative class members worked approximately 7,758 workweeks between November 19, 2021, and December 14, 2025, and, on average, earned approximately $23.95 per hour. *Id.*
- All Trade Team putative class members worked an average of 8-hour days while assigned to BAE SDMS. *Id.*

51. The term "putative class members" will collectively refer to "Trade Team putative class members" and "BAE SDMS putative class members" below.

52. Although the Complaint fails to provide the frequency of potential violations allegedly caused by BAE SDMS and Trade Team, based on employment records and the Complaint's allegations, Defendants are able to establish that the alleged amount-in-controversy exceeds the jurisdictional threshold.[2]

**i. Damages or restitution for allegedly unpaid wages**

53. The Complaint's first and second causes of action allege unpaid minimum and overtime wages, which are subject to a three-year statute of limitations. *See* Compl., ¶¶ 13-15, 36-48. This statute of limitations is extended to four years on account of the Complaint's ninth cause of action for unfair competition. *See* Compl. at ¶ 96. The Complaint fails to allege when or how often work time was

[2] Defendants acknowledge only that the amount put in controversy by Plaintiff's allegations exceeds $5,000,000 and in no way concede that of any of Plaintiff's allegations have merit, that any joint employer theory applies, that any class proposed by Plaintiff may properly be certified, or that Plaintiff is entitled to relief in that amount or any amount whatsoever. Defendants expressly deny any allegations of wrongdoing and reserve all rights to assert any and all applicable defenses in this matter.

unpaid, but Plaintiff has alleged that: Defendants maintained "a practice and/or policy of failing to track all minutes actually worked"; required Plaintiff and putative class members to "wait in [long] line[s] before clocking in at the beginning of their shifts"; and did not pay overtime for working more than eight hours in a day or more than 40 hours in a week. *Id.* at ¶¶ 14, 40. Because putative class members worked on average 8 hours per day, Defendants reasonably assume that any allegedly unpaid waiting time in clock-in lines incurs overtime violations (California requires payment of daily overtime). *See* Robinson Decl., ¶ 10; Sherrick Decl., ¶ 6. However, for the purposes of estimating the amount in controversy, Defendants will take a more conservative approach and only assume that clock-in waiting time resulted in only unpaid minimum wages.

54. Alleged lost wages are calculated up to the date of removal. *Mitchell v. Bank of Am. Corp.*, No. CV 17-6288 FMO (PLAx), 2017 WL 4216562, at *2 (C.D. Cal. Sept. 21, 2017).

55. During the four years preceding the filing of the Complaint, there were approximately 139,263 workweeks (131,505 + 7,758) worked by putative class members. Robinson Decl., ¶ 8; Sherrick Decl. ¶ 5. For the purposes of this calculation, Defendants will conservatively only use the lowest minimum wage at issue during the statutory period ($14/hour in 2021). If putative class members should have been but were not paid for just five minutes of daily work (a reasonable estimate of the amount of time it takes to wait in a line to clock in at the start of a shift), then the amount in controversy for unpaid minimum wages (as damages or restitution) would be approximately **$812,364**.[3]

**ii. Penalties for alleged meal and rest break violations**

56. The Complaint's third and fourth causes of action allege violations of

---

[3] (25 minutes of off-the-clock work per week x 139,263 workweeks) / 60 minutes = 58,026 hours x $14/ hour = $812,364.

California's meal and rest period requirements. The Complaint fails to allege when or how often such violations occurred, but broadly asserts that Defendants "***regularly denied***" employees lawful meal periods and rest breaks. Compl., ¶¶ 17, 19 (emphasis added).

57. California Labor Code § 226.7(c) provides an employee an additional hour of pay for each day meal breaks are not provided in compliance with applicable entitlements under California law. California Labor Code § 226.7(c) also provides an employee an additional hour of pay for each day rest breaks are not authorized and permitted in compliance with applicable entitlements under California law. The applicable statute of limitations for violations of meal and rest break requirements is three years. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1114 (2007). This statute of limitations is extended to four years on account of the Complaint's ninth cause of action for unfair competition. *See* Compl. at ¶ 96.

58. As stated above, during the four years preceding the filing of the Complaint, there were approximately 131,505 workweeks worked by BAE SDMS' putative class members (with an average rate of pay at $32.99/hour) and 7,758 workweeks worked by Trade Team putative class members (at an average rate of pay at $23.95/hour). *See* Robinson Decl., ¶ 8; Sherrick Decl. ¶ 5. Further, putative class members worked an average of 8 hours per day, which triggers an obligation by the employer to provide at least one meal period and two rest breaks under California law. Because Plaintiff alleges that Defendants "regularly" violated meal and rest laws, assuming that all putative class members worked an average of 5 days per workweek, using the respective average hourly rates of pay, and further assuming meal and rest period violations each occurred <u>only one day</u> per work week (a conservative estimate based on Plaintiff's allegations in the Complaint), the amount in controversy for alleged meal period violations reasonably would

approximate $4,524,154[4] and the amount in controversy for alleged rest break violations reasonably would approximate an additional $$4,524,154.[5] Together, these allegedly systematic meal and rest break claims total **$9,048,308**.

**iii. Alleged waiting time penalties**

59. The Complaint's fifth cause of action alleges that putative class members were not timely paid at the end of their employment. Such an employee's wages "continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to 30 days. Cal. Lab. Code § 203(a). The statute of limitations for waiting time penalties claims is three years. Cal. Lab. Code § 203(b).

60. As described above, Plaintiff claims that Defendants, "due to the failure . . . to provide overtime wages mentioned above, failed to pay Plaintiff and Class Members all wages earned prior to resignation or termination," owing to Defendants' "intentionally adopted policies or practices[.]" Compl., ¶ 42. Therefore, even if Plaintiff and putative class members can establish even a small amount of unpaid wages not provided at the end of their employment, those putative class members could receive the full 30 days' worth of penalties. *See Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. ED CV 19-0839-DOC (SPx), 2019 WL 7987117, at *4 (C.D. Cal. June 21, 2019) (assuming 100% of waiting time penalties appropriate to establish the amount in controversy for CAFA removal because plaintiff's complaint alleged "'pattern and practice' of wage violations, including failure to pay overtime or compensate class members for meal and rest breaks").

61. There are approximately 214 BAE SDMS putative class members who

---

[4] Meal Period Violations: [1 day a week x 131,505 workweeks x 1 violation per day x $32.99/hour] + [1 day a week x 7,758 workweeks x 1 violation per day x $23.95/hour] = $4,524,154.

[5] Rest Period Violations: [1 day a week x 131,505 workweeks x 1 violation per day x $32.99/hour] + [1 day a week x 7,758 workweeks x 1 violation per day x $23.95/hour] = $4,524,154.

ended their employment with Defendants at some point between November 19, 2022, and November 24, 2025 (more than 30 days prior to the removal of Plaintiff's complaint). Robinson Decl., ¶ 8. Because BAE SDMS putative class members worked an average of 8 hours per day while employed by Defendants (Defendants will use 8 hours per day to be more conservative), and the average pay rate was $32.99/hour, the amount in controversy from the claim for waiting-time penalties reasonably would approximately be **$1,694,366**.[6]

**iv. Penalties for alleged wage statement violations**

62. The Complaint's sixth cause of action alleges inaccurate wage statements and states that Defendants:

> failed to comply with Labor Code section 226, subdivision (a) by adopting ***policies and practices*** that resulted in their failure, at times, to furnish Plaintiff and Class Members with accurate itemized statements that accurately reflect, among other things, gross wages earned; total hours worked; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate; among other things.

Compl., ¶ 76 (emphasis added). California Labor Code § 226(e) provides an employee a minimum of $50.00 for the initial pay period in which a violation occurs, and $100.00 for subsequent violations, up to a maximum penalty of $4,000.00 per employee. The statute of limitations for penalties under California Labor Code § 226 is one year. Cal. Civ. Proc. Code § 340.

63. During the one year preceding the filing of the Complaint (November 19, 2024) to December 24, 2025, approximately 601 BAE SDMS' putative class members worked a total of 28,955 pay periods on or after November 19, 2024. Robinson Decl., ¶ 8. Plaintiff alleges that Defendants (i) maintained "a ***practice and/or policy*** of failing to track all minutes actually worked" and (ii) "***regularly denied***" lawful meal and rest breaks. *See, e.g.*, Compl., ¶¶ 14, 17, 19 (emphases added). Accordingly, Defendants reasonably assume that Plaintiff alleges violations

---

[6] 30 days x 214 terminated employees x 8 hours per day x $32.99 = $1,694,366.

for each pay period during this time period. However, for the purposes of this calculation, Defendants will assume that each violation was an "initial" violation only and apply only the $50 penalty rate. Therefore, the amount in controversy from the claim for wage statements reasonably would approximate an additional **$1,447,750.**[7] *See Noriesta*, 2019 WL 7987117, at *6 (assuming 100% of wage statement penalties appropriate to establish the amount in controversy for CAFA removal because defendant would only have caused a "single violation per pay period for all wage statements to be inaccurate").

**v. Penalties for alleged failure to pay timely wages during employment**

64. The Complaint's seventh cause of action alleges that Defendants "employed policies and practices that resulted in, at times, not paying Plaintiff and Class Members in accordance with Labor Code section 204." Compl., ¶ 84.

65. Labor Code Section 204 requires that "[l]abor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month." Cal. Lab. Code § 204(a). California Labor Code § 210(a) provides an employee a minimum of $100.00 for the initial pay period in which a violation occurs, and $200.00 for subsequent violations. The statute of limitations for penalties under California Labor Code § 210 is one year. Cal. Civ. Proc. Code § 340.

66. During the one year preceding the filing of the Complaint (November 19, 2024) to December 24, 2025, there were approximately 28,955 pay periods worked by BAE SDMS putative class members. Robinson Decl., ¶ 8. Plaintiff alleges that Defendants employed "***policies and practices***" that resulted in a failure to

[7] 28,955 pay periods x $50 = $1,447,750.

timely pay wages during employment. Compl., ¶ 84 (emphasis added). Accordingly, Defendants reasonably assume that Plaintiff alleges violations for each pay period during this time period. However, for the purposes of this calculation, Defendants will assume that each violation was an "initial" violation only and apply only the $100 penalty rate. Therefore, the amount in controversy for the timely wage payment claim reasonably would approximate an additional **$2,895,500**[8]. *See Martinez v. Cencora, Inc.*, No. 5:24-cv-02663-MRA-SHK, 2025 WL 1443021, at *5 (C.D. Cal. May 20, 2025) (finding 100% violation rate to be reasonable where removing party "assume[d] a lower penalty amount [] by assuming only the $100 per initial violation" and calculated the amount in controversy by multiplying pay periods worked by $100).

**vi. Attorneys' fees**

67. Plaintiff also seeks attorneys' fees on behalf of himself and each putative class member (Compl., *in passim*) which may be included when determining the amount in controversy. *Fletcher v. Toro Co.*, No. 08-cv-2275 DMS (WMc), 2009 WL 8405058, at *3 (S.D. Cal. Feb. 3, 2009) (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)) (requirement may be satisfied "by claims of . . . attorney's fees (if authorized by statute or contract)"). The Ninth Circuit has set an attorneys' fee benchmark at 25 percent for common fund cases, as a certified class action would likely be deemed. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (citing to 3 Newberg on Class Actions, § 14.03, which explains that 20-30 percent is a usual range for a common fund award for attorneys' fees). Even if one were to apply the lower end of that range (20%) to the amount-in-controversy based on the above causes of

[8] 28,955 pay periods x $100 = $2,895,500.

action alone, the potential attorneys' fees would be approximately **$3,179,657.60** (20% of $15,898,288 the total of all claims listed above).

**vii. Summary of CAFA amount in controversy**

68. The above analysis does not take into account Plaintiff's claim on behalf of himself and other putative class members that Defendants failed to provide reimbursement for all business expenses.

69. The claims asserted in the Complaint on behalf of Plaintiff and the potential class members for unpaid minimum wages, meal and rest period violations, waiting time penalties, wage statement penalties, and Labor Code § 204 penalties put in controversy an amount well over the $5,000,000.00 jurisdictional threshold, even without including attorneys' fees. A conservative calculation of the amount put in controversy in this case is as follows:

| Class Claim | Amount in Controversy |
|---|---|
| **Unpaid Minimum Wages** | $812,364 |
| **Meal Period Violations (assuming four violations per week)** | $4,524,154 |
| **Rest Period Violations (assuming four violations per week)** | $4,524,154 |
| **Waiting Time Penalties** | $1,694,366 |
| **Wage Statement Penalties** | $1,447,750 |
| **Labor Code § 204 Penalties** | $2,895,500 |
| **Attorneys' Fees (20% of the above claims' sub-total)** | $3,179,658 |
| **TOTAL** | **$19,077,946** |

70. As such, on the grounds that this potential class action involves a putative class far exceeding 100 members, that minimal diversity is satisfied, and that the amount in controversy far exceeds the required sum of $5,000,000.00, exclusive of interests and costs, original jurisdiction over this matter exists pursuant to CAFA. 28 U.S.C. § 1332(d)(2).

## VI.

## CONCLUSION

71. Based on the foregoing, this Action may be removed under (1) 28 U.S.C. §1442(a), the Federal Officer Removal statute, (2) 28 U.S.C. §1441(a) on the basis of the Federal Enclave Doctrine, and (3) 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act.

Respectfully Submitted,

Dated: December 24, 2025

**DLA PIPER LLP (US)**

By: */s/Mary Dollarhide*
MARY DOLLARHIDE
TAYLOR WEMMER
JOSEPH J. KIM

Attorneys for Defendants
BAE SYSTEMS MARITIME SOLUTIONS SAN DIEGO INC., erroneously sued as BAE SYSTEMS INC., and TRADE TEAM USA, LLC